# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

TREY NEAL, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

NAVIENT SOLUTIONS, LLC, *et al.*,

    Defendants.

Case No. 2:18-cv-04183-NKL

## ORDER

Before the Court is a motion to compel arbitration and stay proceedings filed by Defendants Navient Corporation, Navient Credit Finance Corporation, Navient Private Loan Trust, and Navient Solutions, LLC. Doc. 58. For the following reasons, the motion is denied.

**I.  Background**

Plaintiff Trey Neal initiated this action for breach of contract, on behalf of himself and other similarly situated, claiming that interest on his student loans exceeded the limitation stated in the loans' disclosures. Doc. 1. Neal originally alleged that JP Morgan Chase Bank, N.A. ("Chase") made the loans, *see, e.g., id.* at ¶¶ 2, 10, and later sold one loan to Navient Solutions, LLC ("NSL"). *Id.* at ¶¶ 5, 24. All defendants other than NSL were dismissed,[1] and in March 2019, Neal amended his complaint to add Navient Corporation, Navient Credit Finance Corporation and Navient Private Loan Trust as defendants (collectively, "Navient defendants") under essentially the same breach of contract theory. Doc. 55 (Amended Complaint).

---

[1] The other original defendants—JP Morgan Chase Bank, N.A., National Collegiate Master Student Loan Trust, National Collegiate Master Student Loan Trust 2006-3, and Wilmington Trust Company—were voluntarily dismissed. Doc. 15; Doc. 25; Doc. 26; Doc. 46.

In the Amended Complaint, Neal alleges that NSL services student loans, including Neal's loan, which Navient Credit Finance Corporation purchased from Chase, and that NSL had identified Navient Private Loan Trust as the current owner of his student loan. *Id.* at ¶¶ 2, 4–5. Navient Corporation is allegedly a direct or indirect owner of the other Navient entities. *Id.* at 3. The Navient defendants, however, have submitted a declaration stating that "[i]n or about 2017, [Chase] sold a portfolio of student loans, including a private student loan taken out by plaintiff Trey Neal, and in connection with that sale NSL became the servicer of Neal's loan and Jamestown Funding Trust became the owner. Jamestown Funding Trust is related to Navient Credit Finance Corporation, an affiliate of NSL." Doc. 59-5 (Iorio Declaration), ¶ 2. Jamestown Funding Trust is not a party to this suit.

Defendants privately demanded that Neal submit to arbitration on an individual basis, and when he refused, Defendants filed a motion to stay proceedings and compel arbitration. Doc. 58.

**II.     Discussion**

The Navient defendants argue that the arbitration clause in Neal's credit agreement is valid and enforceable, and that this dispute falls within the scope of the arbitration clause. Doc. 59, pp. 12–14. Defendants further contend that they can enforce the agreement because Navient Credit Finance Corporation is a successor to Chase by virtue of its relationship to Jamestown Funding Trust, the holder of the loan, and that NSL is an agent to the successor, as servicer of the loan. Doc. 63, p. 6. Neal highlights that the agreement specifically defines who can enforce the arbitration clause, and contends that based on the Navient defendants' declaration, none of the defendants are empowered under the contract to compel arbitration. Doc. 62, p. 1.

"The Federal Arbitration Act requires courts to enforce private arbitration agreements." *New Prime Inc. v. Oliveira*, 139 S.Ct. 532, 536 (2019). The Act states that a "written provision in

any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act establishes "a national policy favoring arbitration," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006), while preserving the "fundamental principle that arbitration is a matter of contract," *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Thus, "[i]f two parties agree to arbitrate future disputes between them and one side later seeks to evade the deal, §§ 3 and 4 of the Act often require a court to stay litigation and compel arbitration 'accord[ing to] the terms' of the parties' agreement." *New Prime*, 139 S.Ct. at 537.

When presented with a motion to compel, a court must "'[1] determine whether a valid arbitration agreement exists between the parties and, [2] if so, whether the subject matter of the dispute falls within the scope of the arbitration clause.'" *Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 740 (8th Cir. 2014) (citation omitted). "[S]tate contract law governs the threshold question of whether an enforceable arbitration agreement exists between litigants; if an enforceable arbitration agreement exists, the federal substantive law of arbitrability governs whether the litigants' dispute falls within the scope of the arbitration agreement." *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009). Federal substantive law, in turn, requires a court to "construe[] the clause liberally, resolving any doubts in favor of arbitration." *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008).

Here, the parties disagree as to whether an enforceable arbitration agreement exists between the parties but agree that Ohio contract law governs this threshold question.[2]

---

[2] The parties agree that, to the extent this matter is controlled by state law, Ohio law governs. Doc. 59, p. 12 n.6; Doc. 62, p. 2 n.2; Doc. 59-6, ¶ 22 ("This Agreement is governed by the laws . . . of the United States and the State of Ohio . . . .").

3

A.  **The Terms of the Arbitration Clause**

"The enforceability of contractual arbitration provisions is governed by the laws of contract interpretation." *Javorsky v. Javorsky*, 2017-Ohio-285, 81 N.E.3d 971, ¶ 9 (Ohio Ct. App. 2017). In Ohio, "'[t]he basic objective . . . is . . . to ensure that commercial arbitration agreements, like other contracts, are enforced according to their terms, . . . and according to the intentions of the parties.'" *Council of Smaller Enters. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 668, 687 N.E.2d 1352 (Ohio 1998) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947 (1995)). "[I]n determining the intent of the parties, the court must read the contract as a whole and give effect to every part of the contract." *CSX Transp., Inc. v. Columbus Downtown Dev. Corp.*, 307 F. Supp. 3d 719, 739 (S.D. Ohio 2018) (citation omitted). "'[N]o provision of the contract should be ignored as inconsistent if there exists a reasonable interpretation which gives effect to both.'" *Praxis Capital & Inv. Mgmt. Ltd v. Gemini Holdings I, LLC*, No. 15-2912, 2016 WL 2853591, at *3 (S.D. Ohio May 16, 2016) (quoting *Ottery v. Bland*, 42 Ohio App.3d 85, 87, 536 N.E.2d 651 (Ohio Ct. App. 1987)).

Accordingly, the Court starts with the text of the arbitration provision contained in Neal's loan agreement with Chase:

- A. IF EITHER YOU OR US CHOOSES, ANY CLAIM OR DISPUTE (AS DEFINED BELOW) BETWEEN YOU AND US WILL BE DECIDED BY ARBITRATION AND NOT IN COURT AND NOT BY A JURY TRIAL.
- B. IF EITHER YOU OR US CHOOSES TO ARBITRATE, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS OR OTHER REPRESENTATIVE ON BEHALF OF OTHER PERSONS OR AS A CLASS MEMBER OR OTHER REPRESENTED PERSON ON ANY CLASS CLAIM OR OTHER REPRESENTATIVE TYPE OF CLAIM YOU MAY HAVE AGAINST US, INCLUDING ANY RIGHT TO CLASS OR OTHER REPRESENTATIVE ARBITRATION OR ANY CONSOLIDATION OR INDIVIDUAL ARBITRATION.

\* \* \*

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Agreement and the arbitrability of any claim or dispute), between you and us or our employees, agents, successors or assigns, which arise out of or relate to this Agreement, your loan application, or any resulting or related transaction or relationship (including any such relationship with third parties who do not sign this Agreement) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

Doc. 59-6, p. 8. The agreement also states that "'we,' 'us' and 'our' mean JPMorgan Chase Bank, N.A., and its successors and assigns, and any other holder of this Agreement." *Id.* at p. 6.

This agreement separately lists two groups of entities. The first group indicates who has a right to require arbitrations and that group is referred to as "we", "us" and "our." For example, the agreement states, "IF EITHER YOU OR US CHOOSES ARBITRATION" and "[a]ny claim . . . shall, at your or our election, be resolved by . . . binding arbitration." *Id.* at p. 8. Because "we", "us" and "our" are defined as "JPMorgan Chase Bank, N.A., and its successors and assigns, and any other holder of [the] Agreement," those entities are the only ones that can require arbitrations. *Id.* at p. 6.

The second group of entities is used to limit the scope of what is arbitrable, e.g. the Agreement covers "[a]ny claim or dispute, . . . between you and us or our employees, agents, successors or assigns, which arise out of or relate to this Agreement, your loan application, or any resulting or related transaction or relationship. . . ." *Id.* at p. 8.

Reading these two provisions together, and giving meaning to all parts of the contract, it is apparent that disputes with a broad array of entities are covered by the arbitration agreement, but only a subset of those entities are empowered to choose to arbitrate. In other words, only Chase, its successors or assigns, and other holders of the agreement can force Neal to arbitrate.

The Navient defendants claim that NSL can enforce the arbitration clause because as servicer of the loan, it is an agent to Chase's successor, and covered by the scope of the agreement.

Doc. 63, p. 6. This argument confuses the secondary question of scope with the threshold issue of whether the right to arbitrate is enforceable by an agent. Agents are not included in the specific list of entities within the definition of "us" or "our" that can choose to arbitrate. "Under the principle of *expressio unius est exclusio alterius*, the listing of certain items implies the exclusion of those not listed." *Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, No. 09-2269, 2010 WL 819059, at *4 (N.D. Ohio Mar. 9, 2010), *aff'd*, 437 F. App'x 381 (6th Cir. 2011). *Expressio unius* applies when the nature of the list "'[justifies] the inference that the items not mentioned were excluded by deliberate choice, not inadvertence.'" *Id.* (quoting *Mercer v. 3M Precision Optics, Inc.*, 181 Ohio App.3d 307, 2009-Ohio-930, 908 N.E.2d 1016, ¶ 13 (Ohio Ct. App. 2009)). Here, the agreement separately creates two list of entities, and only one list includes agents. It is entirely appropriate to conclude, therefore, that the omission of agents from the first list of parties empowered to enforce the agreement was intentional. *See id.* (applying *expressio unius* based on reasoning that contract wording was deliberate when operative provision omitted payment terms but other provisions specifically included the payment terms). Therefore, NSL's status as an agent does not permit it to "choose" to arbitrate Neal's claim.

The Navient defendants also claim that they can enforce the arbitration clause because Navient Credit Finance Corporation is a successor to Chase by virtue of its relationship to Jamestown Funding Trust, the holder of the loan. Doc. 63, p. 6; *see also* Doc. 59-5, ¶ 2 ("[I]n connection with [the] sale NSL became the servicer of Neal's loan and [Jamestown] became the owner. [Jamestown] is related to Navient Credit Finance Corporation, an affiliate of NSL."). "There is no question that a . . . corporation normally has a separate legal identity distinct from its subsidiaries" or affiliates. *Trinity Health Sys. v. MDX Corp.*, 180 Ohio App.3d 815, 2009-Ohio-417, 907 N.E.2d 746, ¶ 21 (Ohio Ct. App. 2009). Defendants have not provided a basis for

6

concluding that one defendant is a successor based on a separate entity's status as successor, assign or other holder. Therefore, neither Jamestown's status as a holder nor NSL's status as an agent permits the defendants to invoke the arbitration clause on this record.

### B. Judicial Admission

The Navient defendants also argue that they can enforce the clause because "Neal remains bound by the allegations in the [First Amended Complaint]," including Neal's allegation that Navient Credit Finance Corporation purchased Neal's loan. Doc. 63, p. 6. The defendants further state that Neal's allegations are true. *Id.* at p. 7. "'[A]dmissions in the pleadings . . . are in the nature of judicial admissions [which are] binding upon the parties, unless withdrawn or amended.'" *Missouri Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306, 1314 (8th Cir. 1990) (citation omitted). However, the declaration that the Navient defendants have filed, which is signed under penalty of perjury, states that Jamestown—a different entity—is the actual holder of the loan. Doc. 59-5, ¶ 2. Defendants too are bound by their representations to the Court. Without additional explanation as to how the declaration is consistent with Neal's allegations or otherwise establishes that a defendant is a successor, assign or other holder of the agreement, the declaration, on its face, prevents the Court from concluding that the defendants are empowered under the terms of the agreement to "choose" to arbitrate.

### C. Estoppel

Finally, the Navient defendants argue that alternate estoppel permits them to enforce the arbitration clause because Neal's claim depends on the terms of the loan agreement. Doc. 59, pp. 14–15. "Ohio courts have . . . recognized an 'alternate estoppel theory' whereby 'arbitration may be compelled by a nonsignatory against a signatory due to the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations

and duties in the contract . . . and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations.'" *Short v. Res. Title Agency, Inc.*, 2011-Ohio-1577, 2011 WL 1203906, ¶ 15 (Ohio Ct. App. Mar. 31, 2011) (citation omitted). A claim is "intertwined" when "the signatory to the written agreement 'must rely on the terms of the written agreement in asserting its claims against the nonsignatory.'" *I Sports v. IMG Worldwide, Inc.*, 157 Ohio App. 3d 593, 2004-Ohio-3113, 813 N.E.2d 4, ¶ 17 (Ohio Ct. App. 2004) (quoting *Hill v. G.E. Power Sys., Inc.*, 282 F.3d 343, 349 (5th Cir. 2002)). In such a circumstance, a signatory "will be estopped from attempting to avoid arbitration." *U.S. Bank N.A. v. Wilkens*, 2012-Ohio-1038, 2012 WL 892898, ¶ 54 (Ohio Ct. App. Mar. 15, 2012).

Neal responds that estoppel cannot be used to override express contract language. Specifically, Neal contends that Chase could have given agents, or loan servicers in particular, the power to enforce the arbitration clause, but did not, and that permitting defendants to enforce here would impermissibly rewrite the contract. Doc. 62, p. 5. At least one other state does not permit a nonsignatory to compel arbitration under this doctrine when the arbitration clause is "party specific and the description of the parties does not include the nonsignatory." *Smith v. Mark Dodge, Inc.*, 934 So.2d 375, 381 (Ala. 2006) (citing cases). Ohio courts, moreover, have precluded application of other equitable doctrines when doing so would essentially rewrite a contract, as have federal courts applying federal law. *See, e.g., Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 129 Ohio St. 3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 62 ("Because the commission had previously found that the contract was plain and unambiguous, the commission was bound to give effect to the contract's express terms and was prohibited from rewriting the contract to remedy any unfairness . . . ."); *Padula v. Wagner*, 2015-Ohio-2374, 37 N.E.3d 799, ¶¶ 42, 48 (Ohio Ct. App. 2015) ("Promissory estoppel provides an equitable remedy, and does not apply to statements made

prior to a written contract when the contract covers the same subject matter. . . . Ohio law does not permit recovery under the theory of unjust enrichment when an express contract covers the same subject."); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998) ("Principles of estoppel . . . cannot be applied to vary the terms of unambiguous [ERISA] plan documents; estoppel can only be invoked in the context of ambiguous plan provisions.") (citing *Fink v. Union Central Life Ins. Co.*, 94 F.3d 489, 492 (8th Cir. 1996)).

Neil cites *Ohio Department of Administrative Services v. Design Group, Inc.*, 2007-Ohio-6278, 2007 WL 4171131 (Ohio Ct. App. Nov. 27, 2007), to show that the equitable principles similarly cannot be used to rewrite specific language in the arbitration context. In *Design Group*, the party seeking to compel arbitration argued that nonsignatory, cross-claim plaintiffs could not simultaneously seek the benefits of a contract while also disavowing the obligation to arbitrate imposed by the same contract. *Id.* at ¶¶ 4, 10. In declining to compel arbitration, *Design Group* focused, in relevant part,[3] on clear and unambiguous language that excluded the cross-claim plaintiffs from participating in arbitration, and reasoned that enforcing all terms against the cross-claim plaintiffs, as the movant requested, meant also applying those provisions that specifically limited who can participate in arbitration to the parties to the agreement. *Id.* at ¶¶ 11–14. The drafters of that arbitration clause had "determined the arbitration issue in their agreement" and "essentially contracted away [their] rights to include non-signatories in arbitration." *Id.* at ¶ 14.

Because Neal seeks the benefits and protections of the loan agreement by seeking damages for an alleged breach of the interest rate cap provision, *see, e.g.* Doc. 55 (Amended Complaint), ¶ 15, defendants' estoppel theory would require that Neal also comply with the arbitration

---

[3] Other aspects of the *Design Group* analysis do not apply because in that case a signatory sought to compel a nonsignatory to arbitrate and because some of the claims asserted in that case were not dependent on the contract containing the arbitration clause. *Id.* at ¶¶ 10–11.

obligations contained therein. However, compliance with the agreement as written does not advance the Navient defendants' goal of compelling arbitration because the express terms prohibit agents from "choos[ing]" or "elect[ing]" to arbitrate. Estoppel merely prevents Neal from disavowing the arbitration clause as written; it does not permit the Navient defendants to rewrite or ignore other provisions within the arbitration clause by interpreting the specific definition attached to "us" and "our" to mean some other party. Chase chose to differentiate the parties that are covered by the scope of the agreement from those that are also capable of enforcing the agreement, and in doing so, Chase "determined the arbitration issue in [the] agreement" and "contracted away" the rights of other parties to enforce the arbitration clause. The nature of Neal's claim cannot overwrite this contracting choice.

The cases cited by defendants do not establish that alternate estoppel can be applied to override the express terms of the arbitration clause. Neither *I Sports,* 157 Ohio App. 3d at 598–99, nor *Reilly v. Meffe*, 6 F. Supp. 3d 760, 777–78 (S.D. Ohio 2014), applies the alternate estoppel doctrine. While the court in *Wilkens* did permit the servicer-agent to compel arbitration when the arbitration clause had language requiring "either party [to elect] arbitration," a party to the agreement with the power to invoke the arbitration clause had also moved to compel arbitration. *Wilkens*, 2012 WL 892898, ¶¶ 25, 48. Further, in permitting assignee-nonsignatories to enforce arbitration in *Riggs v. Patriot Energy Partners, L.L.C.*, the court noted express language in the lease stating that "[a]ll covenants and conditions between the parties . . . shall extend to their . . . assigns." 2014-Ohio-558, 2014 WL 605668, ¶ 41 (Ohio Ct. App. Feb. 13, 2014). Therefore, defendants have not presented authority for using estoppel when doing so would conflict with language that directly addresses who can invoke the arbitration clause.

Because the Court finds that the arbitration agreement does not permit the defendants in

this action to require arbitration, the Court does not consider whether the present dispute would also fall within the scope of what is arbitrable.

## III. Conclusion

For the reasons discussed above, the Navient defendants' motion to compel arbitration and stay proceedings, Doc. 58, is denied.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: August 12, 2019  
Jefferson City, Missouri